IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALEXANDER KOLESNIKOV, SR., et al.,

      Plaintiffs,

   v.

SACRAMENTO COUNTY, et al.,

      Defendants.

_____/

No. Civ. S-06-2155 RRB EFB

**MEMORANDUM OF OPINION AND ORDER**

Alexander Kolesnikov, Sr., et al. (collectively "Plaintiffs") brought an action against the County of Sacramento ("County") and various state and county law enforcement officers (collectively "officers") alleging civil rights violations and state law claims arising out of a warrantless home entry and arrest of Sergey Kolesnikov ("Sergey") and Alexander Kolesnikov, Jr. ("Alexander"). Plaintiffs now move for summary adjudication. The officers filed cross-motions for summary adjudication. For the reasons stated below, Plaintiffs' motion is GRANTED in part and DENIED in part, and the officers' cross-motions are GRANTED.[1]

_____

[1] Inasmuch as the court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support

## I.   BACKGROUND

On September 21, 2005, California Highway Patrol Officer ("CHP") Don Ackley ("Officer Ackley") observed Alexander riding an off-road quad vehicle ("ATV") without a helmet.  Pls.' Undisputed Material Fact ("UMF") ¶¶ 1-2, 10.[2]   When Officer Ackley attempted to effectuate a traffic stop by turning on his overhead lights and instructing Alexander to pull over with his public address system, Alexander fled into an undeveloped field. Id. ¶¶ 4-5, 7; Defs.' Supplemental Undisputed Facts ("SUMF") ¶¶ 1, 2.  A pursuit ensued and Officer Ackley requested backup, including the assistance of a CHP airplane, which ultimately directed law enforcement officers to the Kolesnikov residence. Id. ¶ 8, 15-16, 26.

CHP Officer Steven Johnson ("Officer Johnson") was the first officer to arrive at the Kolesnikov residence, arriving just in time to observe the garage door closing.  Pls.' UMF ¶¶ 26-28.  Officer Johnson knocked on the front door, and when no

---

of their positions, it further concludes oral argument is neither necessary nor warranted with regard to the instant matter.  See Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999)(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).

[2] The material facts relevant to this motion are largely undisputed.

one answered, he entered.  Id. ¶ 29.  Shortly thereafter, Sacramento County Deputy Sheriff Matt Tallman ("Deputy Tallman"), Sacramento County Sergeant Gary Shintaku ("Sergeant Shintaku"), Sacramento County Deputy Sheriff Michael Hulsey ("Deputy Hulsey") and Officer Ackley all entered the Kolesnikov residence.  Id. ¶¶ 30, 37, 42, 48, 116.[3]  None of the officers possessed a warrant, nor did any of the officers attempt to secure a warrant prior to entering the residence.

Upon entering the Kolesnikov residence, Officer Johnson immediately went to the garage where he discovered the ATV. Pls.' UMF ¶ 61.  Officer Johnson then went back inside where he encountered Alexander Kolesnikov, Sr., who informed him that Alexander was the driver of the ATV and that he was upstairs. Id. ¶¶ 62-64.  As Officer Johnson ascended the stairs, he observed an individual peak out from behind a door and then close it.  Id. ¶ 69.  Officer Johnson knocked on this door (a bathroom) and advised the individual inside to open it.  Id. ¶ 70.  When no response was forthcoming, Officer Johnson opened the door.  Id. ¶¶ 71-72.  The individual inside, Sergey, told Officer Johnson to "get the fuck out" and kicked the door shut. Id. ¶¶ 72, 74.  At this time, Officer Johnson observed Alexander

_____

[3] According to Deputy Hulsey, he and Sergeant Shintaku followed Deputy Tallman and Officers Ackley and Johnson into the Kolesnikov residence.  Hulsey Dep. at 21:7-11.

coming out of a bedroom.  Id. ¶ 75.  Officer Johnson immediately apprehended Alexander and handcuffed him, with the assistance of Deputy Tallman, who allegedly struck Alexander once or twice with a closed fist.  Id. ¶¶ 76, 86.

While Alexander was being handcuffed, Officer Tallman informed Deputy Hulsey and Sergeant Shintaku that another suspect was in the bathroom.  Pls.' UMF ¶¶ 88, 118.  Deputy Hulsey and Sergeant Shintaku subsequently went to the bathroom and advised Sergey to stop resisting and to come out.  Id. ¶¶ 98, 104, 123.  Sergey refused, telling the officers to "fuck off" and to get out of the house.  Id. ¶ 124.  When Deputy Hulsey and Sergeant Shintaku attempted to enter the bathroom, a pushing match with the door ensued.  Id. ¶ 103.  Ultimately, Deputy Hulsey and Sergeant Shintaku forced their way into the bathroom, placed Sergey on the floor, and handcuffed him.  Id. ¶¶ 105, 122, 125, 127.  As Sergey was being handcuffed, he was allegedly kicked and struck with a Taser weapon by Sergeant Shintaku.  Id. ¶¶ 106-107.  After Sergy was handcuffed, he was escorted outside by Sergeant Shintaku and Deputy Hulsey.  Id. ¶ 132.  On the way outside, Deputy Hulsey pulled his service revolver and pointed it at Sergey's mother, father and other siblings who were screaming in Russian.  Id. ¶¶ 134-135.  Deputy Hulsey claims that he took this action for the purpose of

protecting his life, his partner's life and Sergey's life.   <u>Id.</u>
¶ 135.

Alexander was subsequently released to his parents after
being cited for the following violations: (1) violation of
Vehicle Code § 23103, misdemeanor reckless driving;[4] (2)
violation of Vehicle Code § 2800.1, misdemeanor evading;[5] (3)
violation of Penal Code § 148(a), misdemeanor resisting arrest;[6]
and (4) violation of Vehicle Code § 27803(b), an infraction for

---

[4] California Vehicle Code § 23103(a) provides: "A person who
drives a vehicle upon a highway in willful or wanton disregard
for the safety of persons or property is guilty of reckless
driving."  "Persons convicted of the offense of reckless driving
shall be punished by imprisonment in a county jail for not less
than five days nor more than 90 days or by a fine of not less
than one hundred forty-five dollars ($145) nor more than one
thousand dollars ($1,000), or by both that fine and
imprisonment, except as provided in Section 23104 or 23105."
Cal. Veh. Code § 23103(c).

[5] California Vehicle Code § 2800.1 provides in pertinent
part: "Any person who, while operating a motor vehicle and with
the intent to evade, willfully flees or otherwise attempts to
elude a pursuing peace officer's motor vehicle, is guilty of a
misdemeanor punishable by imprisonment in a county jail for not
more than one year . . . ."

[6] California Penal Code § 148(a)(1) provides: "Every person
who willfully resists, delays, or obstructs any public officer,
peace officer, or an emergency medical technician, as defined in
Division 2.5 (commencing with Section 1797) of the Health and
Safety Code, in the discharge or attempt to discharge any duty
of his or her office or employment, when no other punishment is
prescribed, shall be punished by a fine not exceeding one
thousand dollars ($1,000), or by imprisonment in a county jail
not to exceed one year, or by both that fine and imprisonment."

5

not wearing a helmet.[7]  Pls.' UMF ¶¶ 139-140.  On September 28, 2006, Plaintiffs filed the instant action alleging civil rights violations and state law claims.  Docket at 1.  On January 17, 2008, Plaintiffs filed a motion for summary adjudication.  Docket at 39.  On February 6, 2008, the officers filed cross-motions for summary adjudication.  Docket at 47, 50.

## II. DISCUSSION

Plaintiffs' motion for summary adjudication seeks the following determinations: (1) the warrantless entry into the Kolesnikov residence violated the Fourth Amendment; (2) the entry into the Kolesnikov bathroom violated the Fourth Amendment; and (3) the officers are not entitled to qualified immunity with regard to the warrantless entry claim.  The officers' cross-motions for summary adjudication seek a determination that the officers are entitled to qualified immunity with regard to the warrantless entry claim.  These issues are discussed individually below.

## A.  Legal Standard

Rule 56(a) permits a party claiming relief to move for summary judgment on all or part of a claim after 20 days from

_____

[7]  California Vehicle Code § 27803(b) provides: "It is unlawful to operate a motorcycle, motor-driven cycle, or motorized bicycle if the driver or any passenger is not wearing a safety helmet as required by subdivision (a)."

commencement of an action, or after the opposing party serves a motion for summary judgment. Fed. R. Civ. P. 56(a). Rule 56(b) permits a party against whom a claim has been asserted to "move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). That genuine issue of fact is "material" if it "might effect the outcome of the suit under the governing law." See id. ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party sustains its burden, the burden then shifts to the nonmoving

party to go beyond the pleadings and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. See Celotex, 477 U.S. at 324 (citing Fed.R.Civ.P. 56(e)); Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 987 (9th Cir. 2006). This burden requires more than a simple showing that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The mere existence of a scintilla of evidence is likewise insufficient to create a genuine factual dispute. Anderson, 477 U.S. at 252. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." Id.

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing

the motion.  Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).  Where different ultimate inferences may be drawn, summary judgment is inappropriate.  Sankovich v. Insurance Co. of North America, 638 F.2d 136, 140 (9th Cir. 1981).  The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial."  Matsushita, 475 U.S. at 587.  Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id.

**B.   Warrantless Entry into the Kolesnikov Residence**

Plaintiffs argue that the warrantless entry into the Kolesnikov residence violated the Fourth Amendment because a warrantless intrusion into a private dwelling is presumptively unreasonable under the Fourth Amendment and the pursuit of Alexander for relatively minor offenses is not an exigent circumstance that relieves police officers of the obligation of obtaining a warrant.

Generally, police may not enter a person's home to arrest him without obtaining a warrant.  Fisher v. City of San Jose, 509 F.3d 952, 958 (9th Cir. 2007).[8]  "It is axiomatic that the

_____

[8] The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against

'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest." Welsh v. Wisconsin, 466 U.S. 740, 748 (1984) (citation omitted); see also Fisher, 509 F.3d at 958 (observing that at the very core of the Fourth Amendment is the right of a man to retreat into his own home and be free from unreasonable governmental intrusion); LaLonde v. County of Riverside, 204 F.3d 947, 954 (9th Cir. 2000) (noting "the home is perhaps the most sacrosanct domain and . . . there, Fourth Amendment interests are at their strongest").[9]

---

unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

[9] "'The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave

It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. <u>U.S. v. Johnson</u>, 256 F.3d 895, 905 (9th Cir. 2001) (en banc) (citing <u>Payton</u>, 445 U.S. at 586). This presumption can be overcome, however, when the police confront an exigent circumstance like a fleeing felon. <u>Johnson</u>, 256 F.3d at 905 (citing <u>Welsh</u>, 466 U.S. at 749-50) (a search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show the presence of "exigent circumstances"). In these situations, the exigent circumstance relieves the police of the obligation of obtaining a warrant. <u>Johnson</u>, 256 F.3d at 905; <u>see also</u> <u>Fisher</u>, 509 F.3d at 958 (absent exigent circumstances, a police officer may not enter a home without a warrant).[10] Exigent circumstances do not,

_____

concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.' (Footnotes omitted.)" <u>Payton v. New York</u>, 445 U.S. 573, 586 n. 24 (1980).

[10] Because an arrest in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home, this invasion is too substantial to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory

however, relieve the police of the need to have probable cause for the search.  Id.[11]  As a result, when the government relies on the exigent circumstances exception, it must prove: (1) that the officer had probable cause to search the house; and (2) that exigent circumstances justified the warrantless intrusion.  Id.[12]

Exigent circumstances supporting a warrantless arrest should seldom be found.  LaLonde, 204 F.3d at 956 ("Supreme Court and Ninth Circuit cases have strictly limited the exigency exception, especially in the context of warrantless arrests in the home.").  Such circumstances are narrowly construed and limited to emergency situations demanding an immediate response to prevent serious injury to the arresting officers or other persons.  Id.  "The exigency exception can excuse a warrant for

_____

authority and when probable cause is clearly present.  Fisher, 509 F.3d at 959.

[11]  Although the probable-cause standard is incapable of precise definition, the Supreme Court has stated that "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt," and that the belief of guilt must be particularized with respect to the person to be searched or seized.  Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citation and internal quotation marks omitted).

[12]  "Because the warrant requirement for in-home arrests is based on an understanding of the sanctity of the home, it is primarily concerned with entries into a home to effect an arrest, not with the seizure of the individual.  Thus, 'the critical time for determining whether any exigency exists is the moment the officer makes the warrantless entry.'"  Fisher, 509 F.3d at 959 (emphasis in original).

an in-home arrest when probable cause exists and there is a compelling reason for not obtaining a warrant-for example, a need to protect an officer or the public from danger, [a] need to avoid the imminent destruction of evidence, when entry in hot pursuit is necessary to prevent a criminal suspect's escape, [or a need] to respond to fires or other emergencies." Fisher, 509 F.3d at 960 (internal quotation marks omitted and alterations in original).  Exigent circumstances alone, however, are not enough to establish exigency and thereby excuse the warrant requirement.  Id.  "Instead, [w]hen an officer undertakes to act as his own magistrate, he ought to be in a position to justify it by pointing to some real immediate and serious consequences if he postponed action to get a warrant."  Id. (internal quotation marks omitted).  Consequently, a situation is exigent for purposes of permitting an arrest without a warrant only if a warrant could not be obtained in time to effect the arrest safely-that is, without causing a delay dangerous to the officers or to members of the public.  Id.[13]  Where exigency is

---

[13] The Ninth Circuit has emphasized that to come within the exigency exception, the government must show *both* that dangerous circumstances existed and that it was infeasible to obtain a warrant safely.  Fisher, 509 F.3d at 966 (emphasis in original). To determine whether dangerous circumstances exist for purposes of the exigency exception the following factors are considered: (1) whether a grave offense is involved; (2) whether the suspect is reasonably believed to be armed; (3) whether there exists a

claimed, the government is required to either attempt, in good faith, to obtain a warrant or to present evidence explaining why a telephone warrant was unavailable or impractical. Id. at 961.

The United States Supreme Court has recognized the sanctity of the home, emphasizing that the exceptions to the warrant requirement are few in number and are carefully delineated, and that the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests. Welsh, 466 U.S. at 749-50.[14] In Welsh, the Court stated that it would be particularly hesitant to find exigent circumstances in the context of a warrantless arrest in the home where the underlying offense for which there is probable cause to arrest is relatively minor. Id. at 750; accord Johnson, 256 F.3d at 908 (recognizing that where the police are in hot pursuit of defendant who has committed the misdemeanor of resisting arrest, the relatively minor nature of the offense "weighs heavily against" the reasonableness of a warrantless entry onto a suspect's property based on exigent

clear showing of probable cause; (4) whether there is a strong reason to believe that the suspect is in the premises; (5) whether there is a likelihood that the suspect will escape; and (6) whether peaceable entry is made onto the premises. Id.

[14] To meet the "heavy burden" imposed by Welsh, the police must set forth specific and articulable facts justifying the finding of exigent circumstances. LaLonde, 204 F.3d at 957.

circumstances).   When  the  government's  interest  is  only  to
arrest  for  a  minor  offense,  the  presumption  that  searches  and
seizures  inside  a  home  without  a  warrant  are  unreasonable  is
difficult  to  rebut  because  the  government  usually  should  be
allowed  to  make  such  arrests  only  with  a  warrant  issued  upon
probable  cause  by  a  neutral  and  detached  magistrate.   <u>Welsh</u>,  466
U.S.  at  750.[15]   The  government  bears  the  burden  of  demonstrating
exigent  circumstances  that  overcome  the  presumption  of
unreasonableness  that  attaches  to  all  warrantless  home  entries.
<u>Id.</u>;  <u>see</u>  <u>also</u>  <u>United  States  v.  Tarazon</u>,  989  F.2d  1045,  1049  (9th
Cir.  1993)  ("The  government  bears  the  burden  of  showing  the
existence  of  exigent  circumstances  by  particularized
evidence.").

     In  the  present  case,  it  is  undisputed  that  the  officers
entered  the  Kolesnikov  residence  without  a  warrant  and  without
attempting  to  obtain  a  warrant  prior  to  entering  the  residence.
Therefore,  because  it  is  clear  that  the  officers  had  probable

---

[15]   In  <u>Welsh</u>,  the  Court  observed  that  because  the
government's  interest  in  a  warrantless  intrusion  is  necessarily
less  compelling  in  cases  involving  minor  offenses,  the  gravity
of  the  underlying  offense  is  "an  important  factor  to  be
considered  when  determining  whether  any  exigency  exists."
<u>Welsh</u>,  466  U.S.  at  750-53.   There,  the  Court  concluded  that
"application  of  the  exigent-circumstances  exception  in  the
context  of  a  home  entry  should  rarely  be  sanctioned  when  there
is  probable  cause  to  believe  that  only  a  minor  offense  .  .  .  has
been  committed."   <u>Id.</u>  at  753.

cause to believe that Alexander had committed several crimes and was inside the Kolesnikov residence, the question is whether exigent circumstances existed to justify the warrantless entry. Based on the record in this case, the court concludes that the officers failed to sustain their burden to demonstrate exigent circumstances by particularized evidence to overcome the presumption of unreasonableness that attaches to all warrantless entries. Although it is clear that the officers were in "hot pursuit"[16] of Alexander, the fact that Alexander was only wanted for relatively minor offenses (e.g., misdemeanor reckless driving, misdemeanor evading, misdemeanor resisting arrest and failure to wear a helmet)[17] weighs heavily against a finding of exigent circumstances. Thus, while the officers had the right to pursue Alexander, they were required, based on the severity of the offenses and the lack of dangerous circumstances, to attempt to obtain a warrant prior to entering the Kolesnikov residence or to present particularized evidence demonstrating why a telephone warrant was unavailable or impractical under the

---

[16] See United States v. Santana, 427 U.S. 38, 42-43 (1976) (hot pursuit means some sort of a chase); Johnson, 256 F.3d at 907 (hot pursuit means an "immediate" and "continuous" pursuit of a suspect from the scene of the crime).

[17] See Johnson, 256 F.3d at 908 (characterizing the misdemeanor offense of resisting arrest as a minor offense that "weighs heavily against" a finding of exigent circumstances in the context of a warrantless home entry).

circumstances.   The  court  finds  that  the  officers  failed  to

sustain  their  burden  in  this  regard.    There  is  no  evidence

before  the  court  that  any  of  the  officers  attempted  to  obtain  a

warrant  prior  to  entering  the  Kolesnikov  residence,  nor  have  the

officers  presented  sufficient  evidence  demonstrating  why  a

telephone  warrant  was  unavailable  or  impractical  under  the

circumstances.    The  officers  did  not  point  to  some  real

immediate  and  serious  consequences  that  would  have  resulted  had

the  officers  postponed  entry  to  obtain  a  warrant.    For  instance,

the  officers  did  not  present  particularized  evidence

demonstrating  that  a  warrant  could  not  be  obtained  in  time  to

effect  the  arrest  safely,  i.e.,  without  causing  a  delay

dangerous  to  the  officers  or  to  members  of  the  public.    Nor  did

the  officers  present  particularized  evidence  demonstrating  that

entry  was  necessary  to  avoid  imminent  destruction  of  evidence  or

to  prevent  Alexander  from  escaping.[18]    Accordingly,  because  the

---

[18]  While  the  officers  maintain  that  there  was  a  "strong
likelihood"  that  Alexander  could  have  escaped  because  he  was
evading  law  enforcement  prior  to  entering  the  Kolesnikov
residence,  the  court  finds  this  contention,  without  more,
insufficient  to  establish  the  existence  of  exigent
circumstances.    In  this  regard,  the  officers  failed  to
adequately  explain  why  it  was  impractical  to  have  simply  staked
out  the  residence  while  waiting  for  a  warrant.    Indeed,  given
the  number  of  officers  involved  in  the  pursuit,  it  appears
unlikely  that  Alexander  could  have  escaped  undetected.
Additionally,  to  the  extent  that  the  officers  seek  to  establish
the  existence  of  exigent  circumstances  by  arguing  that  Alexander

officers did not attempt to obtain a warrant prior to entering the Kolesnikov residence or present sufficient evidence demonstrating why a telephone warrant was unavailable or impractical under the circumstances, the court finds that the officers failed to sustain their "heavy burden" to set forth specific and articulable facts justifying the warrantless entry. The court does not find that this is the "rare" case where application of the exigent-circumstances exception to the warrant requirement applies in the context of a home entry where only relatively minor offenses have been committed, and therefore the court concludes that the warrantless entry violated the Fourth Amendment. <u>See</u> <u>Johnson</u>, 256 F.3d at 908 n. 6 (citation omitted) ("In situations where an officer is truly in hot pursuit and the underlying offense is a felony, the Fourth Amendment usually yields. However, in situations where

---

posed a threat to officers and/or the public because he evaded law enforcement and entered an "unknown" residence, the court does not find this argument persuasive. There is no evidence before the court suggesting that Alexander was a danger to the public or to law enforcement officers such that a warrant could not be obtained in time to effect the arrest safely-that is, without causing a delay dangerous to the officers or to members of the public. Therefore, while there was probable cause and a strong reason to believe that Alexander was inside the Kolesnikov residence, exigent circumstances did not exist to justify the warrantless entry because the offenses involved were not "grave," Alexander was not armed or dangerous, and Alexander's escape was unlikely given the law enforcement presence at the Kolesnikov residence.

the underlying offense is only a misdemeanor, law enforcement must yield to the Fourth Amendment in all but the 'rarest' cases."); LaLonde, 204 F.3d at 956 (citing Welsh, 466 U.S. 752-53) (noting that an exigency related to a misdemeanor will seldom, if ever, justify a warrantless entry into the home).

For these reasons, summary adjudication is GRANTED in favor of Plaintiffs with regard to the warrantless entry claim.

**C.   Entry into the Kolesnikov Bathroom**

Plaintiffs argue that Deputy Hulsey and Sergeant Shintaku's entry into the Kolesnikov bathroom to apprehend Sergey violated the Fourth Amendment.   However, because Plaintiffs' neither presented compelling argument nor cited to controlling authority to support their position, the court concludes that Plaintiffs have failed to sustain their burden under Rule 56(c).   See Fed.R.Civ.P. 56(c) (summary adjudication is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law).

For this reason, summary adjudication is DENIED with regard to this claim.

**D.   Qualified Immunity**

Plaintiffs argue that the officers are not entitled to qualified immunity with regard to the warrantless entry claim because it is clearly established that a warrantless intrusion

into a private dwelling to arrest a person suspected of having committed relatively minor offenses violates the Fourth Amendment absent exigent circumstances.

"Qualified immunity protects 'government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Phillips v. Hust, 477 F.3d 1070, 1079 (9th Cir. 2007). "Therefore, regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991). The doctrine of qualified immunity assumes that police officers do not knowingly violate the law. Gasho v. U.S., 39 F.3d 1420, 1438 (9th Cir. 1994). Thus, an officer is presumed to be immune from any damages caused by his constitutional violation. Id. "To overcome this presumption, a plaintiff must show that the officer's conduct was 'so egregious that any reasonable person would have recognized a constitutional violation.'" Id.

The Supreme Court has established a two step inquiry in determining whether an official has qualified immunity. Saucier

v. Katz, 533 U.S. 194, 201 (2001).   To determine whether officials are entitled to qualified immunity, the threshold inquiry is whether, taken in the light most favorable to the party asserting injury, the facts show that the officer's conduct violated a constitutional right.  Saucier, 533 U.S. at 201; Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007).  If a violation is established, then the court must ask whether the law forming the basis of the violation was clearly established in light of the context of the case.  Saucier, 533 U.S. at 201; Inouye, 504 F.3d at 712.  For the law to be clearly established, it is only necessary that the unlawfulness of the official's act be apparent in light of pre-existing law.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  The proper inquiry is an objective, fact-specific question determined by examining the facts at issue under clearly established law at the time.  Id. at 641.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202; Phillips, 477 F.3d at 1079.  "If the law did not put the officer on notice that his conduct was unlawful, summary judgment based on qualified immunity is appropriate."  Saucier, 533 U.S. at 202 (To reject a defense of qualified immunity, the court must find

that "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates the right."); see also Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997) (A right is clearly established "[i]f the only reasonable conclusion from binding authority [was] that the disputed right existed."). For a right to be clearly established, "the very action in question" need not "ha[ve] previously been held unlawful"; instead, the "unlawfulness must be apparent" in light of pre-existing law. Creighton, 483 U.S. at 640.[19]   "The qualified immunity defense allows for mistaken judgments and protects 'all but the plainly incompetent or those who knowingly violate the law.'" Sinaloa Lake Owners Ass'n v. City of Simi Valley, 70 F.3d 1095, 1099 (9th Cir. 1995); Malley v. Briggs, 475 U.S. 335, 341 (1986).   If officers of reasonable competence could disagree on the issue, immunity should be recognized.   Brittain v. Hansen, 451 F.3d 982, 988 (9th Cir.

---

[19]   In determining whether a right is clearly established there need not be a case on all fours prohibiting the particular manifestation of the unconstitutional conduct; rather, the determination turns on whether the state of the law at the time of the constitutional violation provided a "fair warning" that the conduct was unconstitutional.   San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 975 (9th Cir. 2005).   In the absence of binding precedent, courts look to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes, including decisions of state courts, other circuits, and district courts.   Tekle v. U.S., 511 F.3d 839, 847 (9th Cir. 2007).

2006).  The qualified immunity analysis is "essentially legal" and is appropriately made on summary judgment where the underlying facts are undisputed.  Franklin v. Fox, 312 F.3d 423, 437 (9th Cir. 2002)

In the present case, there is no doubt that a warrantless entry into a private dwelling to arrest a person suspected of having committed relatively minor offenses is presumptively unreasonable under the Fourth Amendment absent exigent circumstances.  See Welsh, 466 U.S. at 750; Johnson, 256 F.3d at 905.  Because the court has determined that the officers violated the Fourth Amendment by failing to demonstrate exigent circumstances to justify the warrantless entry, the question is whether the law forming the basis of this Fourth Amendment violation was clearly established in light of the context of the case, that is, whether it would have been clear to a reasonable officer that the warrantless entry was unlawful under the circumstances.  In this regard, the court concludes that the officers reasonably could have believed based on their observations, knowledge, and the "hot pursuit" of Alexander, that exigent circumstances existed to justify the warrantless entry.  Alexander committed several misdemeanor offenses in the presence of law enforcement officers, including evading and resisting arrest, and it has not been "clearly established" that

law enforcement officers can never enter a home without a warrant to pursue a suspect fleeing from the commission of misdemeanor offenses. Although the Supreme Court has noted its "hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue . . . when the underlying offense for which there is probable cause to arrest is relatively minor[,]" Welsh, 466 U.S. at 750, the Court declined to say that there could never be warrantless home arrests for misdemeanor offenses. Id. at 749. Moreover, since Welsh, it has not been clearly established that there can never be warrantless home arrests in the context of a "hot pursuit" of a suspect fleeing from the commission of misdemeanor offenses.[20]

_____

[20] In fact, under California law, when an arrest, or in this case an attempted arrest, is set in motion in a public place, the police may pursue a retreating suspect into a private residence, even if the offense is a mere misdemeanor. People v. Lloyd, 216 Cal.App.3d 1425, 1428-29 (1989) (defendant's refusal to comply with lawful detention for traffic violations justified "hot pursuit" into house to prevent defendant from frustrating arrest); see also In re Lavoyne M., 221 Cal.App.3d 154, 158-59 (1990) (exigency of hot pursuit justified entry to arrest suspect for failure to stop at a stop sign, driving without a license, and resisting an officer—all misdemeanors). These cases bolster the court's conclusion that a reasonable officer could have believed that it was lawful to enter the Kolesnikov residence without a warrant to arrest Alexander. The court notes, however, that neither the Supreme Court nor Ninth Circuit has adopted a similar rule. See Santana, 427 U.S. at 44 (determining that a felony suspect may not defeat an arrest which has been set in motion in a public place by retreating into a private residence). Because Santana involved a felony and did not discuss whether its holding was limited to felonies,

As such, the court cannot conclude that the officers conduct was so egregious that any reasonable person would have recognized a Fourth Amendment violation.   The evidence before the court does not support the conclusion that the officers knowingly violated the law or that only a "plainly incompetent" law enforcement officer would have thought that a warrantless entry was permissible at the time of entry.   An objectively reasonable police officer could have believed that the warrantless entry was lawful in light of the clearly established law and the information the officers possessed, and therefore the officers are entitled to qualified immunity on the warrantless entry claim.[21]

_____

and because the officers have not cited, and the court has not found, binding authority supporting the extension of this rule to misdemeanor offenses, the court will not decide whether the hot pursuit of Alexander into his house to prevent him from frustrating an arrest that began in public provides an exception to the warrant requirement.

   [21] Plaintiffs maintain that the officers are not entitled to qualified immunity because at the time of the warrantless entry, it was "clearly established" that exigent circumstances could not justify a warrantless entry into a home to arrest someone for the commission of a minor offense.   In this regard, Plaintiffs rely primarily on Welsh, 466 U.S. 740, in which the Supreme Court stated that "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense" has been committed.   Id. at 753.   The court, however, does not find that Welsh compels the conclusion that the warrantless entry in this case violated a clearly established right.   In this case, the officers were confronted

For these reasons, the officers are entitled to qualified immunity with regard to the warrantless entry claim.

### III.   CONCLUSION

For the reasons stated above, Plaintiffs' motion is GRANTED in part and DENIED in part, and the officers' cross-motions are GRANTED.

**IT IS SO ORDERED.**

ENTERED this 21st day of April, 2008.

                              s/RALPH R. BEISTLINE
                              United States District Judge

---

with circumstances that differed from those in <u>Welsh</u>. The offenses, albeit minor, were committed in the officers' presence, there was "hot pursuit," and Alexander was a "fleeing" suspect. Therefore, because <u>Welsh</u> did not impose an absolute ban on warrantless home entries for minor offenses, <u>id.</u> at 751-53, and because no subsequent Supreme Court or Ninth Circuit decision has held that similar conduct violates the Fourth Amendment, the court finds that the officers are entitled to qualified immunity since it cannot be said that the warrantless entry into the Kolesnikov residence violated clearly established law.